577 A.2d 944

**Marcella SUPINSKI, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (SCHOOL DISTRICT OF PHILADELPHIA), Respondents.**

Commonwealth Court of Pennsylvania.

Argued March 8, 1990.

Decided July 10, 1990.

632

Paul Eisenberg, Eisenberg & Hickey, for petitioner.

John C. Jackson, with him, Mitchell I. Golding, LaBrum and Doak, for respondents.

Before COLINS, PALLADINO and PELLEGRINI, JJ.

COLINS, Judge.

Marcella Supinski (claimant) petitions for review of an order of the Workmen's Compensation Appeal Board (Board), which reversed the referee's decision and denied claimant benefits. We affirm.

Claimant was employed by the School District of Philadelphia (School District or employer) beginning in September, 1972, as a special education teacher. At that time she had earned a B.S. degree in special education; and in 1977, she received a Master's degree in education and special education. She continued to teach special education for the School District until October 16, 1980, when she resigned because she was unable to handle the increasing stress in the classroom. Following her resignation, claimant was briefly employed by the John Wanamaker department store and the Camden Catholic School District.

In March, 1982, claimant began seeing Richard Cohen, Ph.D., a clinical psychologist, who diagnosed her condition as paranoid schizophrenia and reached the opinion in July, 1982, that her condition was causally related to her employment. Claimant filed for workmen's compensation benefits on October 4, 1982, alleging psychiatric injury and claiming disability beginning October 16, 1980 to the present.

The referee issued a decision granting benefits to claimant beginning October 10, 1982, plus interest, medical fees and expenses, and attorney fees. Both parties appealed, claimant maintaining that she was entitled to compensation for total disability beginning October 16, 1980, and employer arguing that the referee erred by finding that claimant suffered a compensable injury and that claimant gave employer timely notice of her injury. The Board reversed the referee concluding that claimant failed to sustain her burden of proof and declined to address the notice issue.

634

■ In her Petition for Review, claimant raises the following issues: (1) whether her transfer to another school within the School District in September, 1979, changed her responsibilities and working conditions, causing her to become a paranoid schizophrenic and resulting in her total disability; (2) whether the Board erred in concluding that claimant had a subjective reaction to normal working conditions; (3) whether the Board erred in concluding that there was not sufficient evidence to demonstrate abnormal working conditions; and, (4) whether claimant's medical experts conclusively established that claimant's symptoms were caused by the classroom circumstances. In addition, employer raises the issue of whether claimant provided it with timely notice of her work-related disability.[1]

■ The Pennsylvania Supreme Court granted allocatur and consolidated for argument two of this Court's unreported opinions [2] to address and resolve the issue of the proper standard to be applied to mental disability claims in workmen's compensation cases. In *Martin v. Ketchum, Inc.*, 523 Pa. 509, 568 A.2d 159 (1990), the court upheld the standard previously set forth by this Court that in order to recover workmen's compensation benefits for a psychiatric injury, a claimant must prove by objective evidence that she has suffered a psychiatric injury and that such injury is due to abnormal working conditions and is not merely her subjective reaction to normal working conditions. *See, e.g., Russella v. Workmen's Compensation Appeal Board (National Foam Systems, Inc.)*, 91 Pa. Commonwealth Ct. 471, 497 A.2d 290 (1985), *petition for allowance of appeal denied*, 516 Pa. 637, 533 A.2d 95 (1987). The *Martin* court agreed with this Court's analysis in *Russella* as follows:

1. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed, or any necessary findings of fact are not supported by substantial evidence. *Papa v. Workmen's Compensation Appeal Board (Franklin Mint Corp.)*, 121 Pa.Commonwealth Ct. 10, 549 A.2d 1352 (1988).

2. *Ketchum, Inc. v. Workmen's Compensation Appeal Board (Martin)*, (No. 2357 C.D. 1986, filed October 30, 1987), and *Benesky v. Workmen's Compensation Appeal Board (Edwardsville Borough and PMA Insurance Co.)*, (No. 836 C.D. 1986, filed March 26, 1987).

A claimant must produce objective evidence which is corroborative of his subjective description of the working conditions alleged to have caused the psychiatric injury. Because psychiatric injuries are by nature subjective, we believe that if a claimant has met his burden of proving the existence of a psychiatric injury, he cannot rely solely upon his own account of working environment to sustain his burden of proving that the injury was not caused by a subjective reaction to normal working conditions. A claimant's burden of proof to recover workmen's compensation benefits for a psychiatric injury is therefore two-fold; he must prove by objective evidence that he has suffered a psychiatric injury and he must prove that such injury is other than a subjective reaction to normal working conditions.

*Martin,* 523 Pa. at 519, 568 A.2d at 164–65 (quoting *Russella,* 91 Pa. Commonwealth Ct. at 475–76, 497 A.2d at 292). We conclude there is substantial evidence of record to support a finding that claimant suffered a psychiatric disorder. However, causation presents a more difficult question.

Claimant maintains that her transfer to the Harrison School in 1979 involved a change in duties, which was sufficient to establish causation and cites *Leo v. Workmen's Compensation Appeal Board (Borough of Charleroi),* 114 Pa.Commonwealth Ct. 6, 537 A.2d 399 (1988) and *Bevilacqua v. Workmen's Compensation Appeal Board (J. Bevilacqua Sons, Inc.),* 82 Pa.Commonwealth Ct. 511, 475 A.2d 959 (1984), in support thereof. We must disagree.

Claimant testified that for the period 1972 to 1979, she taught at three different elementary schools within the School District: Leidy, Clymer and Lingelbach. At Leidy, her students were "low functioning, retarded, trainable children." Upon her transfer to Clymer, she taught "severely and profoundly impaired children and the physically handicapped." At Lingelbach, claimant taught "low functioning, retarded, trainable children." She described low functioning, retarded, trainable children as having low men-

tal ability, as being docile, tractable children and as being very cooperative.

In the fall of 1979 claimant was transferred to the Harrison School, where she taught learning disabled children. She described learning disabled children as having basically normal I.Q.'s and as higher functioning than retarded, trainable children. Claimant testified that at Harrison, practically every day, the students were very aggressive and combative, refusing to cooperate or do their work. "They would melt crayons on the radiator. They were throwing desks and chairs around. They were constantly fighting. One boy kicked me in the shins a few times. Another boy hit a boy with a baseball bat." She stated that there were ten children in her classroom, and that she had a classroom aide, whose responsibilities were to take the more cooperative children and work with them. Claimant testified that she began not sleeping well at night and not communicating at home with her parents.

Claimant was then transferred to the Jefferson School in September, 1980, where she again was responsible for teaching learning disabled children. She testified that they were "a little bit aggressive too" and that they shouted and fought a lot. She resigned from that position in October, 1980.

In both *Bevilacqua* and *Leo,* the claimants were transferred to entirely different job positions, with entirely different job responsibilities. Here, while claimant was reassigned to different classrooms with different students, the nature of her job responsibilities remained essentially the same throughout her period of employment with the School District; i.e., teaching either retarded or learning disabled children. Furthermore, claimant possessed a Master's degree and had been certificated in this area of instruction.

■ Claimant presented no other witness to testify in support of her assertion that her working conditions were abnormal. She attempted to corroborate her testimony by presenting copies of evaluations prepared by her superiors, describing claimant's unsatisfactory work performance and

resultant chaotic conditions in her classroom. Claimant produced no evidence to show that her working conditions were in any way different from those of the School District's many other special education teachers. A claimant must produce objective evidence which corroborates her subjective description of the working conditions that are alleged to have caused the injury. *Russella.* Claimant cannot rely solely upon her own account of her working environment to meet her burden of showing that her injury was not caused by her subjective reaction to normal working conditions. *Andracki v. Workmen's Compensation Appeal Board (Allied Eastern States Maintenance)*, 96 Pa. Commonwealth Ct. 613, 508 A.2d 624 (1986). *See also Martin.*

Dr. Cohen testified that based on his review of School District records (evaluations), it was his opinion that stress within the school situation was a major factor in claimant's disorder. However, Dr. Cohen also stated that to be in a classroom with emotionally disturbed or severely and profoundly retarded persons was, in and of itself, negatively stressful. He further stated that persons with schizophrenic disorders sometimes perceive stresses that are not actually there, and that whether stresses were part of claimant's reality life or part of her fantasy life was essentially irrelevant.

Neil Gansheroff, M.D., a psychiatrist and claimant's other medical expert, first saw claimant on January 17, 1983. He diagnosed claimant as having had a psychotic episode associated with schizophrenia, still having some residual manifestation to a moderate degree. He opined, on the basis of talking with claimant and her mother, that the nature of her work with the School District produced the stress which precipitated the breakdown she had in 1982. He testified that there is some disagreement as to the cause or causes of schizophrenia. Additionally, he stated that people who suffer from schizophrenia can misperceive pressures that are real, as opposed to unreal.

Clearly, claimant has not demonstrated that her reaction to work was anything but a subjective reaction to normal

working conditions. Neither of her medical experts suggested there was any correlation between her injury and abnormal working conditions. In fact, it was Dr. Cohen's opinion that work as a special education teacher is per se stressful. Specifically, he stated "I am suggesting that it is an acknowledged notion that unless a person is significantly talented and has the disposition that the circumstances of simply being in a classroom on a day-to-day basis with those children, that would, in fact, serve to be extremely negatively stressful." Further, claimant produced no evidence to show that her work environment was anything but normal. Therefore, we agree with the Board that claimant has not sustained her burden of proof.

■ With regard to the issue of whether timely notice was provided to employer, the referee concluded that claimant did not learn that her injury was work-related until sometime shortly after July 11, 1982. The referee further concluded that since claimant filed her claim petition on October 4, 1982, a copy of which was received by employer a few days thereafter, that she satisfied the 120–day notice requirement found in Section 311 of The Pennsylvania Workmen's Compensation Act.[3] *Thomas v. Workmen's Compensation Appeal Board*, 55 Pa.Commonwealth Ct. 449, 423 A.2d 784 (1980). The referee's conclusions are supported by the evidence and, therefore, we hold notice was timely.

In light of the foregoing, the order of the Board is affirmed.

### ORDER

AND NOW, this 10th day of July, 1990, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.

Former CRUMLISH, Jr., President Judge, did not participate in the decision in this case.

3. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 631.