582 A.2d 1147

**Thomas M. WALDO, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (ERIE METROPOLITAN TRANSIT AUTHORITY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 13, 1990.

Decided Nov. 26, 1990.

William J. Schaaf, with him, James R. Fryling, Marsh, Spaeder, Baur, Spaeder & Schaaf, Erie, for petitioner.

Thomas J. Minarcik, Elderkin, Martin, Kelly & Messina, Erie, for respondent.

Before DOYLE and BYER, JJ., and BARRY, Senior Judge.

BYER, Judge:

■ Stress is an inescapable fact of daily life for many people. It also has a major negative impact on the health of American workers. Some people are more susceptible to stress injuries than others. Sometimes, stress can cause a "physical" impairment, like a heart attack.[1] Sometimes the injury is not physical, but mental.[2] When stress in the

1. *See, e.g., Kwawchuk v. Philadelphia Electric Co.,* 497 Pa. 115, 439 A.2d 627 (1981).

2. P. Rosch & A. Elkin, *Promoting Mental Health at the Workplace* (available from the American Institute of Stress, Yonkers, NY) states that:

> Between 75–90% of all visits to primary-care physicians are for stress-related disorders.

workplace causes or aggravates an injury, it might be compensable under the Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.

This case involves a workmen's compensation claim for mental injuries allegedly caused by stress in the workplace. In deciding this case, we must apply our Supreme Court's recent decision in *Martin v. Ketchum, Inc.,* 523 Pa. 509, 568 A.2d 159 (1990), which establishes a heightened burden of proof for claimants asserting a work-related mental injury.

Thomas M. Waldo filed a claim petition alleging that he suffered a mental injury in the nature of depression and anxiety while working for Erie Metropolitan Transit Authority (employer) in his capacity as a bus driver. Waldo claimed that job pressure caused his injury.

At the hearing before the referee, Waldo testified that his injury occurred as a result of being harassed by employer and fellow employees because of an accident which occurred while he was driving a bus. Waldo's treating psychiatrist, Akhter F. Husain, M.D., testified that Waldo suffered from a mixed personality disorder which caused him to have difficulty with any kind of stress in his life. Dr. Husain opined that Waldo's main pre-occupation was his work, and "it was contributing to his continuing anxiety." (27a).

Employer presented the testimony of its superintendent who testified he was aware of Waldo's problems, but that Waldo had not previously complained about stress at work, but had complained about problems of a personal nature. Employer's personnel manager, Wendy L. Schubert, testified, that on July 11, 1984, Waldo applied for and received

Every week, 112 million people take medication for stress-related disorders.

Job stress costs American industry more than $150 billion a year in absenteeism, lost productivity, accidents and medical insurance. Between 1980 and 1986, mental stress claims jumped 531% in California although, total workers' compensation claims rose less than 10%.

One trial judge, who was hearing voluminous work-stress cases, became a beneficiary himself, after claiming that stress from the heavier workload triggered a stroke.

disability benefits under employer's plan with Protective Home Life Insurance Company. On this claim form, Waldo claimed that his depression was a non-work related injury. Dr. Husain, who filled in the physician's portion of this form, also stated that Waldo's depression was non-work related. Similar forms, filled out by Waldo and Dr. Husain on September 5, 1984, October 19, 1984, November 20, 1984, and December 17, 1984, also indicated that Waldo's depression was non-work related. (143a–149a).[3]

Employer also introduced the testimony of its expert, Edward Wallerstein, M.D., a psychiatrist. Dr. Wallerstein described Waldo as suffering from a borderline personality disorder which was "lifelong and was not caused or aggravated in any way by his employment." (Referee Finding of Fact 10.)[4]

The referee accepted as credible Dr. Wallerstein's testimony that Waldo's injury was not sustained in the course of his employment. The referee rejected Dr. Husain's testimony that Waldo's injury was work-related. The referee also stated that even if Waldo's injury was caused by his employment, "it resulted from Waldo's subjective reaction to normal working conditions." (Referee Finding of Fact 13.) Waldo appealed and the board affirmed.

Waldo presents three issues for our review: (1) whether the referee's findings are based upon substantial evidence; (2) whether the referee erred as a matter of law in conclud-

---

**3.** Waldo also filed for benefits under a Blue Cross policy. Dr. Husain's diagnosis on these claim forms again stated that Waldo's depression was non-work related.

**4.** Dr. Wallerstein testified:

Mr. Waldo's history clearly indicates an inability to cope with situations of any kind. For instance, he was discharged from the Army after nine months because of his inability to adjust. He left the hospital on one occasion because he could not tolerate the stress of his girlfriend's ultimatum that he must leave. He could not sustain a marriage longer than one week. He was unable to handle his relationships with fellow employees, nor with his parents. He was unable to articulate any specific events with his fellow employees during his employment. He is unable to tolerate the ordinary vicissitudes of life.

(108a—109a).

ing that Waldo's injury was the result of a subjective reaction to normal working conditions; and (3) whether the referee and board improperly adopted and misapplied an "unusual psychological result doctrine."

■ Waldo asserts that he presented objective, unequivocal evidence through the testimony of Dr. Husain that he suffers from a psychiatric injury. Waldo argues that even Dr. Wallerstein admitted that he suffered from a mental injury, albeit not work-related, and therefore the referee "capriciously disregarded" competent evidence. However, a capricious disregard standard of review does not apply when conflicting testimony has been presented. *See Russell v. Workmen's Compensation Appeal Board (Volkswagen of America),* 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

■ Furthermore, the fact that Waldo suffered from a mental disorder is insufficient by itself to entitle him to benefits under the act. Waldo, to recover benefits, must establish that workplace conditions caused or aggravated his condition. The pivotal issue in this case is whether Waldo has established the required causal relationship between his employment and his mental injury.

Our analysis must begin with the recent decision in *Martin v. Ketchum, Inc.,* 523 Pa. 509, 568 A.2d 159 (1990), which involved a suicide allegedly precipitated by work-related stress. The Supreme Court applied the chain-of-causation test it had adopted in *Globe Security Systems Co. v. Workmen's Compensation Appeal Board (Guerrero),* 518 Pa. 544, 544 A.2d 953 (1988),[5] and found nothing in the

---

5. We described the elements of the chain-of-causation test in *McCoy v. Workmen's Compensation Appeal Board (McCoy Catering Services, Inc.,* 102 Pa.Commonwealth Ct. 436, 518 A.2d 883 (1986), to include:
  (1) a work-related injury;
  (2) which directly caused the employee to become dominated by a disturbance of the mind of such severity as to override normal rational judgment; and
  (3) which disturbance resulted in the employee's suicide.
  Fortunately, in this case, claimant's mental problems did not manifest themselves to the point that he committed suicide.

record that indicated that Mr. Martin's suicide was caused by his employment. The court stated, "It was Martin's failure to meet his self-imposed expectations and his perception of success that caused him to take his life." *Martin,* 523 Pa. at 520, 568 A.2d at 165.

It is the element of causation on which the Supreme Court focused in *Martin*. Because of the subjective nature of mental injuries, the majority opinion in *Martin* established a heightened burden of proof to recover workmen's compensation benefits for a psychiatric injury, requiring that the claimant prove by objective evidence (1) that he has suffered a mental injury; and (2) that such injury is other than a subjective reaction to normal working conditions, which requires that the employee establish that the mental injury was caused by "abnormal working conditions." *Id.,* 523 Pa. at 517–18, 568 A.2d at 163–164. The court in *Martin* reasoned as follows:

> Abandoning the distinction between normal and abnormal working conditions, as the Appellant urges us to do, would eliminate the element of causation. It would destroy the fundamental principle underlying the scheme of the Workmen's Compensation Act—that, in order to be compensable, an injury must be work-related. Under the Appellant's theory, a claimant would have to establish only that the employee suffered from a mental illness while employed and that the illness was a condition created or aggravated by that employee's perception of the conditions of his employment. That would reduce workmen's compensation benefits to nothing more than a disability or death benefit payable only because of the employee status of the claimant—and not because the injury was caused by his employment.

*Id.*[6]

Under *Martin*, the claimant must produce "objective evidence which is corroborative of his subjective de-

6. Justice Larsen's dissent in *Martin* presents a different point of view. Justice Larsen argues in his dissent that the majority does not offer a persuasive basis for applying an increased burden of proof for mental

scription of the working conditions alleged to have caused the psychiatric injury." *Id.*, 523 Pa. at 519, 568 A.2d at 164–65, *citing Russella v. Workmen's Compensation Appeal Board (National Foam Systems Inc.),* 91 Pa.Commonwealth Ct. 471, 475, 497 A.2d 290, 292 (1985). Even mental and nervous disabilities resulting from work-related stress, if due to an employee's subjective reaction to being at work and being exposed to normal working conditions, is not compensable under the act. *Thomas v. Workmen's Compensation Appeal Board (Atlantic Refining Co.),* 55 Pa. Commonwealth Ct. 449, 423 A.2d 784 (1980). A claimant cannot rely solely upon his own account of the working

injuries as compared with what is required to recover for physical disabilities in workmen's compensation cases. The dissent notes the lack of justification in the act for distinguishing the two. Justice Larsen observes the abnormal working condition test adopted in *Martin* requires that the claimant not only present evidence of a connection between a work event and his disability, but additionally inquires "whether the individual worker is 'abnormal' because he or she has suffered mental disability under conditions where the average worker does not." 523 Pa. at 530, 568 A.2d at 170 (Larsen, J., dissenting).

Justice Larsen's position is similar to that adopted in other jurisdictions. The Alaska Supreme Court has rejected a heightened burden for proving a causal connection between work and a mental disability, asserting that because no additional requirement is imposed in physical injury cases where it is difficult to determine whether work actually caused the injury, such requirement is not only unnecessary but also is not set forth in Alaska's worker's compensation act. *Fox v. Alascom, Inc.,* 718 P.2d 977 (Alaska 1986). Other states have also rejected a heightened burden of proof in mental disability cases. *See Albertson's Inc. v. Workers' Compensation Appeals Board of State of California,* 131 Cal.App.3d 308, 182 Cal.Rptr. 304 (1982); *Royal State National Insurance Co. v. Labor and Industrial Relations Appeal Board,* 53 Haw. 32, 487 P.2d 278 (1971); *Yocom v. Pierce,* 534 S.W.2d 796 (Ky.1976); *McGarrah v. SAIF,* 296 Or. 145, 675 P.2d 159 (1983); and *Breeden v. Workmen's Compensation Commissioner,* 168 W.Va. 573, 285 S.E.2d 398 (1981).

Going to the heart of this entire question is the following statement in *Indemnity Insurance Co. of North America v. Loftis,* 103 Ga.App. 749, 751, 120 S.E.2d 655, 656 (1961):

The human body consists of bones, flesh, ligaments, and nerves, controlled by the brain. The law does not state which of these particular elements must produce the disability. If a disability exists whether or not it is psychic or mental, if it is real and is brought on by the accident or injury, this being a humane law, and liberally construed, it is nevertheless compensable.

environment to meet the burden of showing that a psychiatric injury was not caused by a subjective reaction to normal working conditions. *Supinski v. Workmen's Compensation Appeal Board (School District of Philadelphia)*, 133 Pa.Commonwealth Ct. 631, 577 A.2d 944 (1990); *Andracki v. Workmen's Compensation Appeal Board (Allied Eastern States Maintenance)*, 96 Pa.Commonwealth Ct. 613, 508 A.2d 624 (1986).[7]

■ Our review of the record, discloses no evidence corroborating Waldo's subjective description of the working conditions which allegedly caused his mental injury. Waldo made no effort to establish the existence of abnormal working conditions. So far as we can discern from the record and the facts found by the referee, Waldo at best can establish that the injury resulted from his subjective reaction to normal working conditions, which *Martin* holds is noncompensable under the act. Furthermore, the referee accepted as credible the testimony of Dr. Wallerstein that Waldo's employment did not cause his injury, and we are bound by this finding. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 132 Pa. Commonwealth Ct. 277, 572 A.2d 838 (1990).

Waldo next argues that an "unusual psychological result doctrine" was improperly adopted and misapplied by the referee and the board, because the 1972 amendments to the act eliminated the "unusual pathological result doctrine." Because the definition of injury under the act now specifically includes aggravation, reactivation, or acceleration of the injury, section 301(c) of the act, 77 P.S. § 411(1), Waldo claims his pre-existing problems do not bar his recovery. The claimant in *Sibrava v. Workmen's Compensation Appeal Board (TWA)*, 113 Pa.Commonwealth Ct. 286, 537 A.2d 75 (1988), advanced this argument but we stated:

7. This case was presented to the referee and the board prior to the Supreme Court's decision in *Martin*. Although the board decision does not cite *Martin*, the board applied the same standard, relying upon *Russella* which *Martin* cites with approval.

While this Court has embraced the view that work-related psychiatric disability alone can be compensable, the practical difficulties in evaluating the merit of these claims have led the Court to adopt the evidentiary safeguard of *pinpointing causation* and demonstrating objective perceptions of workplace events so as to provide more reliable bases for making factual determinations and to deter frivolous claims.

*Id.*, 113 Pa.Commonwealth Ct. at 289–90, 537 A.2d at 77 (footnote omitted) (emphasis added).

Our review of the record fails to discover evidence that adequately attributes the cause of Waldo's injury to abnormal working conditions, as required by *Martin.* Therefore, we affirm the order of the Workmen's Compensation Appeal Board.

## ORDER

The Order of the Workmen's Compensation Appeal Board is affirmed.