595 A.2d 765

**Samuel R. CALABRIS, Jr., Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (AMERICAN GENERAL COMPANIES), Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 2, 1991.

Decided July 24, 1991.

Cynthia M. Cline, Pittsburgh, for petitioner.

Daniel D. Harshman, Pittsburgh, for respondent.

Before CRAIG, President Judge, KELLEY, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

Samuel R. Calabris, Jr. (Claimant) petitions for review of an order of the Workmen's Compensation Appeal Board (Board) which affirmed the referee's decision and denied Claimant benefits. We affirm.

Claimant was employed as a district manager for American General Insurance Company (Employer), where he supervised other employees and sold insurance to the public. His 28-year affiliation with Employer had been satisfactory up until the events that occurred on January 14, 1987. At that time Employer performed an audit of the branch office managed by Claimant. Prior to this audit, Claimant had dismissed a subordinate for misappropriating funds. When the audit team arrived, accompanied by a company vice-president and several attorneys, Claimant was told to take a two-week paid leave. On January 17, 1987, Claimant experienced chest pains, numbness and sweating symptoms. His visit to the emergency room resulted in a referral to Dr. Mark Fuller, a psychiatrist. On January 28, 1987, Claimant was terminated.

Claimant filed a claim petition alleging that he had been disabled as a result of a work-related injury. At the hearing held before the referee, Claimant described the audit which he alleges was not the customary procedure. Normally an audit was conducted without the presence of the company's vice-president or any attorneys, nor was he required to take a leave of absence.

Claimant also presented the testimony of Dr. Mark Fuller, who diagnosed Claimant's condition as major depression, rendering him totally disabled. Dr. Fuller opined that Claimant was disabled as a result of the events that took place at Employer's office on January 14, 1987. However,

Dr. Fuller testified that "something happened at work, ... but I don't know what happened."

█ Although Employer presented no evidence, the referee dismissed Claimant's petition concluding that Claimant had failed to prove abnormal working conditions. The referee also concluded that the medical testimony failed to establish a causal connection between Claimant's psychological injury and his employment. Claimant appealed and the Board affirmed, determining that Claimant had failed to meet his burden of proof applicable to cases involving psychiatric injury. Claimant appealed to this Court.[1]

Claimant raises four issues for our review: 1) whether the Board erred in determining that Claimant failed to show abnormal working conditions when he produced evidence concerning the audit and the accompanying request that he take a two-week leave from duties, 2) whether the Board erred in finding the psychiatrist's testimony was incompetent as to causation because he lacked knowledge concerning the details surrounding the audit, 3) whether the higher standard of proof applied in psychiatric injury cases violates the due process and equal protection clauses of the United States and Pennsylvania Constitutions, and 4) whether the "abnormal working conditions" doctrine is void for vagueness.

Work-related psychiatric injuries are compensable under Section 301(c) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411(1). *University of Pittsburgh v. Perlman,* 49 Pa.Commonwealth Ct. 347, 405 A.2d 1048 (1980). As with any other workmen's compensation case the claimant must show that his injury is work related. In psychic injury cases this necessitates a somewhat modified burden. This Court in *Andracki v. Workmen's Compensation Appeal*

1. Where the burdened party is the only party to present evidence and does not prevail before the agency, our scope of review is whether the agency erred as a matter of law or capriciously disregarded competent evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America),* 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

*Board (Allied Eastern States Maintenance)*, 96 Pa.Commonwealth Ct. 613, 508 A.2d 624 (1986) explained the burden of proof placed upon a claimant in psychic injury cases as follows:

> The degree of proof demanded of a claimant in such cases is high. *Hammerle v. Workmen's Compensation Appeal Board (Dept. of Agriculture)*, 88 Pa.Commonwealth Ct. 486, 490 A.2d 494 (1985). 'Due to the highly subjective nature of psychiatric injuries, the occurrence of the injury and its cause must be adequately pinpointed.' *Thomas [v. Workmen's Compensation Appeal Board (Atlantic Refining Co.) ]*, 55 Pa.Commonwealth Ct. [449,] 455, 423 A.2d [784,] 787 [1980]. Where the causal connection between the injury and the employment is not obvious, unequivocal medical testimony is required to establish causation. *Bell Telephone [v. Workmen's Compensation Appeal Board (DeMay)*, 87 Pa.Commonwealth Ct. 558, 487 A.2d 1053 (1985) ].
>
> Further, 'evidence of the employee's subjective reaction to being at work and being exposed to normal working conditions is (not) an injury under the Act.' *Thomas*, 55 Pa.Commonwealth Ct. at 456, 423 A.2d at 788. The claimant must instead produce objective evidence which corroborates his subjective description of the working conditions alleged to have caused the injury. *Russella [v. Workmen's Compensation Appeal Board (National Foam Systems, Inc.)*, 91 Pa.Commonwealth Ct. 471, 497 A.2d 290 (1985) ]. In sum, the burden of proof faced by a claimant to recover workmen's compensation benefits for a psychiatric injury is thus twofold: he must prove by objective evidence that he has suffered a psychiatric injury and he must demonstrate that such injury is other than a subjective reaction to normal working conditions. *Id.*

*Andracki*, 96 Pa.Commonwealth Ct. at 617–18, 508 A.2d at 626; *Archer v. Workmen's Compensation Appeal Board (General Motors)*, 138 Pa.Commonwealth Ct. 309, 587 A.2d 901 (1991).

■ What constitutes abnormal working conditions is a mixed question of law and fact fully reviewable by this Court. *Marsico v. Workmen's Compensation Appeal Board (Department of Revenue)*, 138 Pa.Commonwealth Ct. 352, 588 A.2d 984 (1991); *Driscoll v. Workmen's Compensation Appeal Board (City of Pittsburgh)*, 134 Pa.Commonwealth Ct. 206, 578 A.2d 596 (1990); *City of Scranton v. Workmen's Compensation Appeal Board (Hart)*, 136 Pa.Commonwealth Ct. 483, 583 A.2d 852 (1990).[2]

■ Work-related stress that produces mental disability, if resulting from an employee's subjective reaction to normal work conditions, cannot be deemed compensable under the Act. *Waldo v. Workmen's Compensation Appeal Board (Erie Metropolitan Transit Authority)*, 136 Pa.Commonwealth Ct. 264, 582 A.2d 1147 (1990). The stress related to fear of losing one's job when it is a subjective reaction to normal working conditions is not compensable. *Evans v. Workmen's Compensation Appeal Board (Anchor Hocking Corp.)*, 87 Pa.Commonwealth Ct. 436, 487 A.2d 477 (1985).

■ We have adopted the following rule for making the determination of whether the work conditions are abnormal.

When there is no physical injury as precursor to the psychic injury, the claimant must prove either (a) that actual extraordinary events occurred at work which caused the trauma and these specific events can be pinpointed in time, *Thomas v. Workmen's Compensation Appeal Board*, 55 Pa.Commonwealth Ct. 449, 423 A.2d 784 (1980), or (b) that abnormal working conditions over a longer period of time caused the psychic injury. *Pate v. Workmen's Compensation Appeal Board (Boeing Vertol Company)*, 104 Pa.Commonwealth Ct. 481, 522 A.2d 166 (1987), cert. denied, 484 U.S. 1064, 108 S.Ct. 1025, 98 L.Ed.2d 989 (1988).

**2.** We note that Judge Barry in *Archer* indicates that the question of what encompasses abnormal working conditions is one of law.

*Cadden v. Workmen's Compensation Appeal Board (City of Philadelphia)*, 135 Pa.Commonwealth Ct. 195, 198–99, 579 A.2d 1378, 1380 (1990).

In *Martin v. Ketchum*, 523 Pa. 509, 568 A.2d 159 (1990), the Supreme Court espoused the "abnormal working condition" standard as the inquiry to apply when resolving whether an incident at work was the source of the psychic injury.

> The phraseology, 'abnormal working conditions', has been employed by the Commonwealth Court in this case and in prior decisions of that court to distinguish between objective and subjective evidence of the working conditions alleged to have caused the injury—i.e., the mental illness or mental illness ending in suicide. Review of that line of cases by the Commonwealth Court demonstrates that the phraseology describes the requirement that the claimant produce evidence establishing that the mental illness is in fact a work-related injury. The requirement is an objective one, rather than a subjective one.

> . . . .

> The Commonwealth Court's approach was intended to distinguish psychiatric injuries that are compensable because the necessary causal relationship between the employment and mental disability has been established from those psychiatric injuries that arise from the employee's subjective reactions to normal working conditions. The phraseology 'abnormal working conditions' has developed into a shorthand expression for that critical distinction.

> . . . .

> Abandoning the distinction between normal and abnormal working conditions, as the Appellant urges us to do, would eliminate the element of causation. It would destroy the fundamental principle underlying the scheme of the Workmen's Compensation Act—that, in order to be compensable, an injury must be work-related. Under the Appellant's theory, a claimant would have to establish

only that the employee suffered from a mental illness while employed and that the illness was a condition created or aggravated by that employee's perception of the conditions of his employment. That would reduce workmen's compensation benefits to nothing more than a disability or death benefit payable only because of the employee status of the claimant—and not because the injury was caused by his employment.

*Id.* 523 Pa. at 517–20, 568 A.2d at 164–65.

Whether the working conditions are or are not abnormal is a question which relates to the cause of the injury. Case law in Pennsylvania makes clear that while abnormal working conditions may be sufficient to link the injury to the employment, subjective reactions to normal working conditions will not. *Martin.* The apparent rationale for this rule is that while some circumstances by their nature may cause psychic injury, others would not work such an injury on a healthy psyche unless there were other elements at play. Accordingly, we have directed our attention to distinguishing between what actually took place at the work place and what was a subjective reaction to those real events. Only when we are satisfied that the actual events could cause a psychic injury, have we held that benefits were proper.

In *Martin* the Supreme Court found that the fact that Martin had been reassigned to another client was a normal working condition. The Court did not believe that this was the type of event which would cause a reasonable person to suffer a psychiatric injury. The court believed the injury in that case stemmed from Martin's reaction to that event. He perceived that he had failed. The reassignment may have been the event which set off the injury, but without Martin's fear of failure the injury would not have occurred.

This case is similar to *Martin.* In this case the only working conditions that the claimant points to as the cause of his injury is the fact that an audit, which was admittedly different from audits which had taken place in the past, occurred. We focus our attention then on what it is about

this audit that could cause claimant's injury. The facts show that claimant dismissed a subordinate for misappropriation of funds, that this led to an audit performed with greater diligence and without the participation of the office manager, Claimant. This audit did not increase in any way Claimant's responsibilities or work load, did not mean that Claimant would work longer hours, but only meant that his performance was under greater scrutiny. In fact Claimant was given paid leave while the audit ensued.

If this audit did indeed bring about Claimant's injury it must be that his injury is the result of his worrying about what the audit would disclose or what course of action would be taken as a consequence. We do not mean to suggest by this that the claimant is guilty of any wrongdoing, but merely that his injury is the result of his subjective reaction to the audit—his worrying—and not to the audit itself. Perhaps Claimant was concerned that he would be blamed for the misappropriations made by others, or perhaps he was concerned that the audit would disclose discrepancies of which he was not aware. The focus of his concern is not for us to surmise, nor is it relevant to our inquiry. We need only satisfy ourselves that there is nothing in the record which would support a conclusion that the working conditions themselves caused Claimant's psychiatric injury. We have examined the record and concur with the referee that Claimant's injury is the result of his subjective reaction to the audit. As in *Martin* the events at the work place may have set off Claimant's fears, but it is those fears which are at the heart of the injury.

■ Claimant attempted to establish the causal connection between his injury and his employment by providing the medical testimony of Dr. Fuller. The referee found that despite Claimant's psychological impairment "the testifying physician failed to establish a causal relationship to any event at work."

Dr. Fuller testified on cross-examination as follows:

I can find no other stresses in this man's history, and I find no other significant events in his life, other than that

particular day and whatever happened at work to him that day, and I think in this gentleman's case that there is a high likelihood that the events of that day led to this illness.

. . . .

I've heard some things about the work, but I don't know what happened. There were some problems. He was—I don't know—asked to go home, then later relieved of duty. I just don't know the details. I understand that there was something that happened there, and that I really don't understand all the details—if he was sent home or whatever.

Fuller Deposition p. 26–7.

Although the doctor opined that based on a reasonable degree of medical certainty he believed that Claimant's illness is related to the events at work, we do not believe that his testimony supports a finding that the audit rather than Claimant's subjective reaction to the audit is the cause of Claimant's injury. Because the doctor has no knowledge of specific work events and cannot point to any such events as causing the injury, he is unable to say whether particular events rather than a subjective reaction to those events caused the injury. *Andracki.* Without a complete grasp of Claimant's work situation, the doctor's testimony is not competent. As we have acknowledged above, work events may have played upon claimant's fears, but like the *Martin* case, those events did not cause the injury.

 Claimant next contends that the higher standard of proof imposed upon claimants with mental injuries violates the equal protection and due process clauses of the United States and Pennsylvania Constitutions. This issue was fully explored in *Pate v. Workmen's Compensation Appeal Board (Boeing Vertol Co.)*, 104 Pa.Commonwealth Ct. 481, 522 A.2d 166, *petition for allowance of appeal denied*, 517 Pa. 611, 536 A.2d 1335 (1987), *cert. denied*, 484 U.S. 1064, 108 S.Ct. 1025, 98 L.Ed.2d 989 (1988). The *Pate* court stated that:

We note initially that despite the advanced state of modern psychology, psychiatric and physical injuries are not susceptible to the same objective standard of proof. Psychiatric diagnoses are characteristically subjective in nature. Therefore, we believe that the requirement set forth in Thomas that a claimant adequately pinpoint the objective cause of a mental injury rationally relates to the governmental interest in discouraging meritless or fraudulent claims. The abnormal working condition requirement similarly deters dubious claims and, in effect, charges an employer with workmen's compensation liability only where the claimant's psychiatric injury can be traced to some abnormality in the work relationship. In light of the subjective nature of psychiatric claims, we believe that this additional, substantive burden of proving an abnormal work condition is reasonable to prevent a multitude of psychiatric injury claims based on *normal* work conditions.

*Pate*, 104 Pa.Commonwealth Ct. at 486, 522 A.2d at 169 (emphasis in original).

Claimant also suggests that the "abnormal working conditions" standard is unconstitutionally vague. In *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), the United States Supreme Court set out the basis for the vagueness doctrine as follows:

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc

and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut(s) upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of (those) freedoms.'

*Id.* 408 U.S. at 107–08, 92 S.Ct. at 2298–99 (footnote omitted).

For the vagueness doctrine to apply, a statute must be penal or prohibitive in nature or it must impinge upon a First Amendment freedom. The rule of law in question neither mandates nor prohibits any behavior. It is merely a rule to guide the agency and courts when they are faced with the difficult task of deciding whether a psychiatric injury is caused by a claimant's employment. The rule is vague, but it is necessarily vague because no clear guidelines exist in this murky sphere of psychic injuries caused by intangible forces. Claimant misconstrues and misapplies the vagueness doctrine and we will not extend its application to laws which neither mandate nor prohibit particular conduct.

Accordingly, based upon the foregoing we affirm the order of the Workmen's Compensation Appeal Board.

## ORDER

AND NOW, this 24th day of July, 1991, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.