PENNSYLVANIA HUMAN RELATIONS
COMMISSION and The State Work-
men's Insurance Fund, Petitioners,

v.

WORKMEN'S COMPENSATION
APPEAL BOARD (BLECKER),
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 10, 1994.
Decided Dec. 22, 1994.
Reargument Denied Feb. 7, 1995.

Richard F. Faux, for petitioners.
Robert D. Hamilton, for respondent.

Before DOYLE and KELLEY, JJ., and NARICK, Senior Judge.

KELLEY[1], Judge.

The Pennsylvania Human Relations Commission (employer) appeals an order of the Workmen's Compensation Appeal Board (board) which affirmed a referee's decision granting Sidney Blecker's (claimant) claim petition.

On January 25, 1985, claimant filed a claim petition alleging that he suffered a psychic injury which rendered him totally disabled while employed as an attorney by employer. Nine hearings were held from April 18, 1985 through June 25, 1987.

Claimant entered into evidence the deposition of his psychiatrist, Dr. Lawrence Altaker, and the deposition of his psychologist, Dr. Stanley Schneider. Dr. Altaker testified that claimant suffers from an adjustment disorder with anxiety and obsessive personality disorder; he unequivocally opined that the adjustment disorder was caused by the performance evaluation claimant received on November 8, 1984. Dr. Altaker also testified that claimant is currently totally disabled. Dr. Schneider corroborated the obsessive personality diagnosis and concluded that this condition was exacerbated by the receipt of the performance evaluation.

The referee made the following relevant findings of fact:

6. In January 1984 the defendant issued new performance standards for the attorney's [sic] and litigation was a key factor for the performance evaluation process and an attempt was made to define commitment to affirmative action.

* * * * * *

11. On November 8, 1984, a performance evaluation was given to the claimant. . . .

12. Claimant is alleging that on November 8, 1984 upon receiving the performance evaluation and it's [sic] marks, one of which had the claimant marked in the middle fair for affirmative action that claimant suffered a reaction to said evaluation and required medical attention.

13. Claimant had had difficulties with his home and family life and had required the treatment and counseling care of Dr. Altaker prior to November 8, 1984.

* * * * * *

26. After careful review of all the evidence in the record, this Referee finds:

a) claimant suffered a subjective reaction to the poor evaluation report given by his supervisor of claimant's performance of work and this was not causally related to his employment and therefore not compensable.

b) claimant was performing his normal and usual job duties at the time of the evaluation and therefore any psychiatric condition was not causally related to his work or any stress or unusual activities.

c) the testimony of defendant's witnesses were [sic] credible and the witness for claimant incredible and incompetent.

Accordingly, on December 13, 1988, the referee dismissed claimant's claim petition. Claimant appealed the referee's decision to the board. The board affirmed the referee's decision and claimant appealed to this court.

This court entered an order: (1) vacating the referee's thirteenth finding of fact as there was no evidence in the record to support such a finding; (2) remanding the matter for a determination based on the existing record as to whether the retroactive application of new performance standards to claimant constituted an abnormal working condition; and (3) remanding the matter for clarification of the referee's finding of fact 26(c) regarding the credibility of claimant and his witnesses as it was unclear which single witness for claimant the referee disbelieved. *Blecker v. Workmen's Compensation Appeal Board (Pennsylvania Human Relations Commission)*, 141 Pa.Commonwealth Ct. 317, 595 A.2d 729 (1991) (hereinafter referred to as *Blecker I*).

On remand, the referee made the following additional findings of fact:

---

1. This case was reassigned to the author on September 16, 1994.

1. I hereby incorporate my findings of fact dated December 13, 1988 except as modified as follows.

2. Paragraph 13 of the original decision is revoked.

3. This Referee finds that the retroactive application of the performance standards issued in January 1984 and applied to claimant's performance evaluation for the period of May 1983 through April 1984 constituted an abnormal working condition.

4. In finding that the retroactive application of the performance standards are abnormal working conditions this Referee finds that claimant was the only attorney to receive a performance evaluation in the Human Relations Commission during this time frame (1983–1984). This Referee finds that the supervising attorney Thomas Bell and the Regional Director did not receive a performance evaluation.

5. I further find that not only did the employer retroactively apply performance standards did [sic] it also rated claimant for incidents which occurred outside of the rating period.

6. Claimant's anniversary date was May 1984 at which time, if regulations were followed, a performance evaluation was due. The performance evaluation given in this case was given November 8, 1984.

7. If find that the performance standards which tied performance to litigation were of such a nature that it was impossible for claimant to have performed under those standards in the time given. Thomas Bell, who testified on behalf of the employer, admitted that in his first drafts of the evaluation he felt it was inappropriate to rate claimant on litigation. He was later directed to change his evaluation.

8. I find that prior to February 1984 there were no performance standards for commitment to affirmative action and that the rating of affirmative action based on litigation also constitut-ed an abnormal working condition as applied to the complainant.

9. Prior to the performance standards being published in January 1984 there was no performance standard requiring an HRC attorney to litigate any specific number of cases in any one year. Because claimant did not litigate the number of cases required by the later-adopted performance standard, he was severely criticized. Claimant, not knowing this was a performance standard and not having the necessary case load, was subjected to an abnormal condition of employment.

10. Thomas Bell admitted prior to January 1984 there were no definitions of commitment to affirmative action in any performance standard published by the Human Relations Commission. Nevertheless, claimant was rated by Mr. Bell for the entire performance evaluation period May 1983 through May 1984 based on the standards that went into effect in January 1984.

11. Findings of fact 26a and b are revoked and amended to read that: (a) claimant suffered a reaction to a performance evaluation which was the product of standards which were retroactively applied. This reaction was thus caused by an abnormal working condition. Claimant's psychiatric condition is causally related his [sic] employment and therefore compensable; (b) as stated in finding 24 claimant is currently totally disabled and has been so disabled for the periods from November 19, 1984 through January 7, 1985 and October 17, 1985 to the present and continuing.

12. Finding of fact 26c is hereby amended to read that: it was originally found that "the witness for claimant was incredible and incompetent." My original finding intended to find claimant's testimony to be not credible had a prior psychiatric condition which was the same as his current condition which tended to make his testimony not credible. Upon further review, I find that claimant's testimo-

ny is credible when viewed in light of the corroborating testimony of the defendant's witnesses. Since my findings of fact are supported by both the claimant's testimony and the witnesses for the defendant, as they relate to the retroactive application of the performance standards, I find all witnesses credible. Further, I find all medical witnesses credible as to diagnosis, causation and disability.

■ Based upon the above findings, the referee concluded that claimant's psychic injury of November 8, 1984 was compensable and granted claimant's claim petition on December 20, 1991. Employer appealed to the board which affirmed the referee's decision on August 10, 1993. It is from that order that employer now appeals to this court.[2]

On appeal, employer contends that (1) the board erred as a matter of law in affirming the referee's second decision when that decision clearly exceeds the narrow scope of this court's remand order; (2) the board erred as a matter of law in affirming the referee's decision that the retroactive application of performance standards constituted abnormal working conditions; and (3) the referee erred in concluding that the claimant sustained his burden of proving that his alleged injury was anything other than a subjective reaction to normal working conditions.

■ With regards to the first issue, employer argues that the referee went beyond the scope of this court's remand order requiring a clarification of finding 26(c) by reversing his previous credibility determinations and making entirely new credibility determinations. We disagree.

■ A referee may make different factual findings after remand, even without taking additional evidence, if the matter has been remanded for the purpose of making new factual findings. *Shustack v. Workmen's Compensation Appeal Board (B–D Mining Co.)*, 141 Pa.Commonwealth Ct. 296, 595 A.2d 719 (1991) (citing *Borovich v. Colt Industries,*

492 Pa. 372, 424 A.2d 1237 (1981)). We agree that this court remanded the present matter for clarification by the referee of finding 26(c). *See Blecker I*, 141 Pa.Commonwealth Ct. at 323, 595 A.2d at 732. But this matter was also remanded for the referee to make a determination based on the existing record as to whether the retroactive application of the new performance standards to claimant constituted an abnormal working condition. *Id.* In other words, the referee was directed to make additional findings crucial to the outcome of the case with which the referee complied. *See A & P Tea Co. v. Workmen's Compensation Appeal Board (Giglio)*, 114 Pa.Commonwealth Ct. 507, 539 A.2d 51 (1988).

Accordingly, the board's resolution of employer's first issue was correct.

Next, employer contends that the board erred in affirming the referee's decision (1) that the retroactive application of performance standards constituted abnormal working conditions and (2) that the claimant sustained his burden of proving that his psychic injury was other than a subjective reaction to normal working conditions.

■ It is well settled that a claimant's burden of proof to recover worker's compensation benefits for a psychiatric injury is twofold: (1) he must prove by objective evidence that he has suffered psychiatric injury and (2) he must prove that such injury is other than a subjective reaction to normal working conditions. *Martin v. Ketchum, Inc.*, 523 Pa. 509, 519, 568 A.2d 159, 164–65 (1990) (quoting *Russella v. Workmen's Compensation Appeal Board (National Foam Systems, Inc.)*, 91 Pa.Commonwealth Ct. 471, 476, 497 A.2d 290, 292 (1985). Recently, in *Hershey Chocolate Co. v. Workmen's Compensation Appeal Board (Lasher)*, 162 Pa.Commonwealth Ct. 23, 28, 638 A.2d 336, 339 (1994), this court discussed at length a claimant's burden of proof:

Both this Court and the Supreme Court have been concerned with the fact that the subjective nature of psychiatric injuries

---

**2.** We will affirm the adjudication unless we find that constitutional rights were violated, or an error of law committed, or that any finding of fact necessary to support the adjudication is not

supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

can make it difficult to prove that such injuries are work related. Both courts have emphasized the need to adequately pinpoint the cause of a psychiatric injury. *Martin; Thomas v. Workmen's Compensation Appeal Board,* 55 Pa.Commonwealth Ct. 449, 423 A.2d 784 (1980). This concern with causation has resulted in a modified, higher burden of proof for claimant's. *Calabris v. Workmen's Compensation Appeal Board (American General Companies),* 141 Pa.Commonwealth Ct. 405, 595 A.2d 765 (1991). Additionally, psychiatric injury cases have been deemed to be highly fact sensitive. *Blecker v. Workmen's Compensation Appeal Board (Pennsylvania Human Relations Commission),* 141 Pa.Commonwealth Ct. 317, 595 A.2d 729 (1991). Finally, "[w]here the causal connection between the injury and the employment is not obvious, unequivocal medical testimony is required to establish causation." *Calabris,* 141 Pa.Commonwealth Ct. at 410, 595 A.2d at 767.

This Court has adopted the following test for determining whether a psychiatric injury is compensable.

> [W]hen there is no physical injury as precursor to the mental injury, ... the claimant must prove either (1) that actual extraordinary events occurred at work which caused the trauma and that these specific events can be pinpointed in time, or (2) that abnormal working conditions over a longer period of time caused a psychiatric injury.

*Lowe v. Workmen's Compensation Appeal Board (Lowe's Auto Sales, Inc.),* 152 Pa.Commonwealth Ct. 450, 456, 619 A.2d 411, 414 (1992). In Martin, the Pennsylvania Supreme Court adopted this Court's reasoning in previous cases, that "abnormal working conditions" was the means by which a "court [should] distinguish between objective and subjective evidence of the working conditions alleged to have caused the injury...." *Id.* at 518, 568 A.2d at 164. Since then, this Court has opined:

> Whether the working conditions are or are not abnormal is a question which relates to the cause of the injury. Case

law in Pennsylvania makes clear that while abnormal working conditions may be sufficient to link the injury to the employment, subjective reactions to normal working conditions will not. Martin. The apparent rationale for this rule is that while some circumstances by their nature may cause psychic injury, others would not work such an injury on a healthy psyche unless there were other elements at play. Accordingly, we have directed our attention to distinguishing between what actually took place at the work place and what was a subjective reaction to those real events. Only when we are satisfied that the actual events could cause a psychic injury, have we held that benefits were proper.

*Calabris,* 141 Pa.Commonwealth Ct. at 413, 595 A.2d at 769. Whether specific working conditions can be considered abnormal is a mixed question of law and fact subject to appellate review, because that determination "is simply a deduction from other facts and is purely the result of legal reasoning." *City of Scranton v. Workmen's Compensation Appeal Board (Hart),* 136 Pa.Commonwealth Ct. 483, 490 n. 3, 583 A.2d 852, 856 n. 3 (1990), petition for allowance of appeal denied, 528 Pa. 625, 597 A.2d 1154 (1991); see *Martin.*

With the above discussion in mind, this court believes that the referee erred in determining that the application of the new performance standards to claimant constituted an abnormal working condition. As this court pointed out in *Blecker I,* an unreasonable decision by an employer is not an abnormal working condition per se. *Blecker,* 141 Pa.Commonwealth Ct. at 322, 595 A.2d 729 (1991).

It is clear from the record in this case that employer's decision to use the performance standards effective January 1, 1984 was no more than an unreasonable decision. As the record shows, no matter what standards the employer applied in evaluating claimant's performance, claimant would have sustained the same subjective reaction to a poor evaluation.

Claimant's medical witnesses, which the referee found to be credible, testified that

claimant has suffered from an obsessive personality disorder for a number of years and that his condition was exacerbated by the receipt of the performance evaluation. Dr. Schneider testified as follows:

> More predominant and readily apparent in Sid's case is an excessive devotion to work and productivity to the exclusion of almost anything else in life. There is also indecisiveness. He has to be perfectionistic. He has to get it right. And his sense of right typically exceeds the so-called normal person's standard of what is acceptable.
>
> It has got to be perfect. He may not even accept it when it is perfect. It looks like the person is neurotic but it is a lifelong pattern which makes it a personality disorder.
>
>     \*    \*    \*    \*    \*    \*
>
> Q   Is it your opinion that you have already given us that Mr. Blecker had this prior to November 8?
>
> A   He has always been in my opinion a compulsive personality. I think that it was exacerbated tremendously by the performance evaluation which pushed him over.
>
> I am not surprised when I heard that he was hospitalized. I would have not been surprised if he had had a psychotic break I would not be surprised if I heard he became immobilized, paralyzed.
>
> I would not be surprised to learn if he became totally dysfunctional.

Reproduced Record, pp. 953a–54a.

Dr. Altaker testified regarding claimant's prior disorder and the receipt of the November 8, 1984 evaluation as follows:

> Q   Doctor, when you were taking the history of Mr. Blecker, did you have any information from him with regard to his obsessive personality or his anxiety reaction, those types of problems, that he was having prior to the time that he got that performance evaluation?
>
> A   Well, he basically had no complaints before he got that evaluation. A person with a personality disorder does not recognize themselves as having a problem.
>
> Their disorder may affect their functioning and performance in a moderate way,

but unless it becomes severe which it wasn't in his case the person functions. So they themselves are not aware of anything. . . .

>     \*    \*    \*    \*    \*    \*
>
> Q   Doctor, do you feel that the fact that the individual had this obsessive personality disorder prior to November 8 in any way heightened his sensitivity to the evaluation when it was given to him?
>
> A   I think that probably it did. I think that he always felt very responsible and felt that he did a good job, and all of a sudden—this is in keeping with people who have compulsive personality or obsessive personalities. . . .

Reproduced Record, pp. 1000a; 1021a.

Clearly, claimant did not have a healthy psyche at the time of his November 8, 1984 performance evaluation. Accordingly, based on claimant's obsessive personality disorder, no matter when claimant received the performance evaluation or what standards employer imposed, claimant's reaction to an unfavorable evaluation would not have changed.

As claimant testified to and in keeping with the medical witnesses' opinions regarding claimant's disorder, when he received the poor performance evaluation claimant was immediately very upset over (1) the rating given him in the area of affirmative action because he felt that he was inordinately active in outside affirmative action causes and (2) employer's written comments regarding his failure to actively place cases on the public hearing docket when he settled several cases. *See* Reproduced Record, pp. 136a–139a.

What actually took place in the present situation was that employer presented claimant with a performance evaluation, that admittedly was based on new performance standards and was past claimant's anniversary date, but which claimant was aware would be forthcoming. Reproduced Record, pp. 122a–23a; 893a. As opined by the medical witnesses, the fact that claimant believed that his evaluation would not be anything but favorable was rooted in his personality disorder. He was unable to foresee anything but

an excellent evaluation no matter what the criteria. Therefore, employer's choice to apply the new performance standards to claimant was merely an unreasonable decision that did not give rise to an abnormal working condition with claimant suffering a subjective reaction to normal working conditions.

Accordingly, the referee erred in concluding based on the facts that the retroactive application of employer's performance standards to claimant constituted an abnormal working condition and also erred in finding that claimant's reaction was not a subjective reaction to normal working conditions. Therefore, in accordance with this opinion, the board's decision is reversed.

*ORDER*

NOW, this 22nd day of December, 1994, the order of the Workmen's Compensation Appeal Board, dated August 10, 1993, at No. A92–0726, is reversed.

DOYLE, Judge, concurring.

I concur in the result reached by the majority in this appeal for the reasons underlying my dissent in *Hershey Chocolate Co. v. Workmen's Compensation Appeal Board (Lasher),* 162 Pa.Commonwealth Ct. 23, 638 A.2d 336 (1994), *petition for allowance of appeal pending,* 101 M.D. Allocatur Docket 1994.

If the mere enlargement of a claimant's job responsibilities in the climb up the corporate ladder is a sufficient basis on which to predicate a compensable psychic disorder, *Hershey Chocolate Co.,* then certainly the facts in this case should compel a similar result.