Joseph L. Bevilacqua, Petitioner *v.* Workmen's Compensation Appeal Board (J. Bevilacqua Sons, Inc.), Respondents.

Argued September 14, 1983, before Judges WILLIAMS, JR., DOYLE and BARBIERI, sitting as a panel of three.

*George W. Teets,* with him, *Albert B. Mackarey,* for petitioner.

*Kathleen Lenahan,* with her, *David E. Heisler, Lenahan and Dempsey,* for respondents, J. Bevilacqua Sons, Inc.

OPINION BY JUDGE WILLIAMS, JR., May 22, 1984:

Joseph L. Bevilacqua (claimant) petitions for review of the opinion and order of the Workmen's Compensation Appeal Board (Board) reversing the referee and dismissing his claim petition.

The claimant was employed by J. Bevilacqua Sons, Inc. (employer), which is owned and operated by his family. He worked there for approximately twenty years. For the first fifteen years, he was a sheet metal worker under the direct supervision of a foreman. During that time, his father and two uncles ran the business. Approximately five years before June 23, 1980, the claimant's last day of employment, his father retired and ceased active participation in the day to day operations of the business. At that time, the claimant left his old job and assumed his father's duties as an estimator. In the new position, his duties included supervising other employees, performing estimates for customers, answering telephones in the office and preparing and sending bills and other paperwork.

As a result of the changes in his duties, the claimant began to experience depression, anxiety and mental confusion. He became increasingly unable to perform his daily job functions and, although his uncles did not pressure him to do more work, he felt that he was not performing the estimator job in a satisfactory manner.

In September, 1978, the claimant came under the care of Dr. Anthony A. Galdieri, a clinical psychologist. Dr. Galdieri treated him for approximately two months and during this period his condition stabilized. He was able to function at work at that time, but due to financial considerations, he discontinued the treatments.

In January, 1980, the claimant returned to Dr. Galdieri. His condition had deteriorated and he was suffering from severe depression, severe anxiety, mental confusion, poor concentration and thoughts of suicide. He was on sick leave from work through the first several months of 1980 and continued under Dr. Galdieri's care on a regular basis during this period. Also, at this time, Dr. Galdieri's associate, Dr. Boriosi, a psychiatrist, prescribed medication for the claimant which he continued to take through the date of the hearing. Responding to treatment, the claimant exhibited improvement and as the expiration of his leave approached, Dr. Galdieri recommended that he return to work. However, during the week immediately preceeding his return, there was a complete exacerbation of his symptoms and when he returned to work, he was unable to function. Although he reported to work daily, the claimant could do little work. He would perform only minor tasks such as answering the telephone when necessary and picking up blueprints. However, because of his inability to drive, his wife had to chauffer him to pick up blueprints. When he related his continuing difficulties at work, Dr. Gal-

dieri concluded that the claimant would have to realize that he could no longer remain in the estimator job. Finally, on June 23, 1980, the claimant advised one of his uncles that he could no longer continue his employment.

Thereafter, he continued in treatment with Dr. Galdieri and, although he had improved by the date of the hearing, he was still unable to work.

Dr. Galdieri concluded that the change of duties in the family business caused the claimant's total mental disability. This conclusion was confirmed by Dr. Leroy J. Pelicci, a neurologist-psychiatrist, who examined the claimant on behalf of the employer.

The referee found that the claimant suffered a work-related mental injury on June 23, 1980 resulting in a temporary total disability. The Board, citing *Thomas v. Workmen's Compensation Appeal Board,* 55 Pa. Commonwealth Ct. 449, 423 A.2d 784 (1980) reversed the referee, reasoning that the claimant's disability was caused by his subjective reaction to being at work and being exposed to normal working conditions, and concluded that the claimant had not suffered a compensable injury under The Pennsylvania Workmen's Compensation Law (Act).[1] The sole issue for our review is whether the Board committed legal error in so holding.[2]

Mental illness can be a compensable injury if it arises in the course of employment and is related to it. *Kitchen v. Workmen's Compensation Appeal Board (Mesta Machine Co.),* 73 Pa. Commonwealth Ct. 289, 458 A.2d 631 (1983). A claimant must present un-

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§1-1066.

[2] Where, as here, the party with the burden of proof has prevailed before the factfinder, our scope of review includes, *inter alia,* determining whether an error of law has been committed. *Oakes v. Workmen's Compensation Appeal Board,* 66 Pa. Commonwealth Ct. 569, 445 A.2d 838 (1982).

equivocal medical testimony to establish the causal connection. *Id.* Due to the highly subjective nature of psychiatric injuries, the occurrence of the injury and its cause must be adequately pinpointed. *Thomas.*

In *Thomas,* an oil refinery worker's nervous reaction in August, 1975 to a television news broadcast of a fire at another refinery was considered inadequate evidence of a work-related injury. Even though Thomas experienced fires in 1970 and 1974 and an explosion in 1971 at his work place, such events were not substantial evidence of a compensable injury in August, 1975. Also, we rejected the argument that his daily fear of another traumatic experience at work was disabling, concluding that "evidence of an employee's subjective reaction to being at work and being exposed to normal working conditions is [not] an injury under the Act." *Id.* at 456, 423 A.2d 788. Nothing unusual occurred at Thomas' workplace at or near the time that he contended that he suffered his disabling mental injury. His condition was constant from the 1970 fire until he viewed the news broadcast of the fire at the other refinery in August, 1975. Although he had been absent from work prior to August, 1975 because of his nervous condition, once for six weeks, he always returned to his normal work without filing for disability.

In the instant case, the medical testimony unequivocally establishes that the claimant began to develop mental illness upon assuming his father's job, a position of greater responsibility than he formerly held. This change in responsibilities distinguishes the case at bar from *Thomas.* Except for the stabilization in September and October, 1978, as long as the claimant attempted to perform his new duties, his condition deteriorated in an objectively discernable manner. Ultimately, he became totally disabled. Recently, we recognized that such a long-term process may result

in a compensable mental injury. *See McDonough v. Workmen's Compensation Appeal Board (Commonwealth of Pennsylvania)*, 80 Pa. Commonwealth Ct. 1, 470 A.2d 1099 (1984). We believe that the present case is analogous to *McDonough* and conclude, therefore, that the claimant suffered a compensable injury on June 23, 1980.

Accordingly, we must reverse the order of the Board and will reinstate the order of the referee.

### ORDER

AND Now, this 22nd day of May, 1984, the order of the Workmen's Compensation Appeal Board, No. A-81776, is reversed and the order of the referee in the above-captioned matter is reinstated.