632 A.2d 1361

**Judith M. WILSON, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (ALUMINUM COMPANY OF AMERICA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 3, 1993.

Decided Oct. 22, 1993.

Reargument Denied Dec. 8, 1993.

Judith M. Wilson, petitioner, for herself.

Mark J. Neuberger and Patricia L. Wozniak, for respondent.

Before PALLADINO and FRIEDMAN, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Judith M. Wilson (Claimant) has appealed an order of the Workmen's Compensation Appeal Board (Board) affirming a referee's decision denying her compensation for a job-related psychiatric injury under Section 301(c) of The Pennsylvania Workmen's Compensation Act (Act).[1]

The Referee summarized the facts of this case as follows. Claimant worked for the Aluminum Company of America (Alcoa) for over twenty-five years, and between 1969 and 1985 she held responsible positions as an Administrative Assistant. In February, 1979, her then manager, Mr. Hendrick, suffered a fatal heart attack in her presence on the premises of Alcoa. Afterwards, in August 1979, she assisted a Mr. Barstow, and because of the large amount of work assigned, she frequently worked as late as 10:00 at night and skipped lunches.

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411.

Then in February of 1981, Mr. Barstow was transferred to another department and she followed him but was shortly thereafter also assigned to assist another manager. Because of this dual assignment, Claimant was required to go up and down between two floors ten or twelve times a day. The Employer's medical records reveal that in this period she had reported various psychological symptoms related to stress and nerves. Then in 1985, Mr. Barstow was transferred to Mexico and she took a leave of absence for four months because she was tired and cried all the time. She now attributes this condition to stress.

After returning to work after four months leave, Claimant found that she was a floater with no permanent assignment, office or desk; she was forced to carry paper, pencils, and personal items in a box with her. She was also dropped three grades, from grade 11 to grade 8, from her previous position. She was not listed in the telephone book and her job consisted of mostly opening and filing mail. It was during this period that she was assigned to work in a storage room.

Her husband, who is also employed at Alcoa as an engineer, testified that his wife would frequently bring work home with her, and frequently worked late. He also testified that he had never been aware of anyone working with Alcoa who was assigned to a storage room without a desk or phone. The Referee concluded that it was not found in this witness' testimony that claimant had been treated in an improper manner.

In August of 1986, she was assigned to a department known as Systems Engineering Integrated [SEI]. She became a permanent employee there and did filing and set up a library of magazines. In May, 1987 this department was eliminated.

That same month, Ms. Litman, the personnel manager, offered Claimant an attractive job elimination package in which she would be given 75% of her salary for two years prior to retirement. During the month following this offer, during which time Claimant merely sat in an office where they moved the desk, took out the telephone, tore down the walls,

and painted all around her in an effort to rehabilitate the premises, she was not given any assignment.

On July 7, 1987, Ms. Litman, called in Claimant and told her that the job elimination offer was rescinded because Alcoa had instituted a new policy for clerical personnel, and offered her a job as a computer operator in the Purchasing Department. Claimant went on vacation at this time before responding to this new job offer. She returned to work and told Ms. Litman she was not feeling right or acting right. It was during this period that she made her suicide attempt and began seeing her treating psychologist, Deborah Greenwald, Ph.D., who diagnosed her as suffering from severe depression. She was terminated in September, 1987 when she did not take the new job.

In her deposition testimony, Dr. Greenwald stated that she began treating Claimant after she had attempted suicide. She stated, with the qualification that she is not a psychiatrist, that the medications prescribed by Alcoa medical personnel were inappropriate for depression, and may have contributed to its severity. She also stated that Claimant's thinking was distorted, and that she was involved in many emotionally upsetting problems in her employment.

Employer's medical expert, Dr. Edward S. Friedman, M.D., a licensed and board certified psychiatrist, concluded that Claimant's depressions were due to her personality pre-disposition, and such situations as she had faced at work would not have triggered depressions in the average person.

The referee also summarized the testimony of Employer's other witnesses, who were personnel managers and lawyers, and concludes that their testimony indicates that they did nothing improper regarding Claimant's treatment.

The referee concluded that:

17. No evidence is found that the claimant has received any type of verbal abuse or harassment.

18. It is found that the claimant has been exposed to certain situations that she perceives as being demeaning

and job-threatening, which have, in fact, resulted in depression.

19. Claimant has not been exposed in the workplace to abnormal working conditions.

The Board did not take any additional evidence, and consequently, the ultimate fact-finder is the Referee. *Yantos v. Workmen's Compensation Appeal Board*, 128 Pa.Commonwealth Ct. 231, 563 A.2d 232 (1989).

What is before us is a mental-mental case: i.e., a psychological stimulus causing a mental injury. *Jeanes Hospital v. Workmen's Compensation Appeal Board (Miller)*, 141 Pa.Commonwealth Ct. 308, 595 A.2d 725 (1991), *appeal denied*, 532 Pa. 648, 614 A.2d 1144 (1992); *See Boeing Vertol Co. v. Workmen's Compensation Appeal Board (Coles)*, 107 Pa.Commonwealth Ct. 388, 528 A.2d 1020 (1987), *appeal denied*, 517 Pa. 619, 538 A.2d 501 (1988) (in which this Court recognized three categories of mental injury cases.)

■ When there is no physical injury as a precursor to the psychological injury, our Supreme Court has held that the claimant must establish that the mental disability suffered is not the result of the employee's subjective reaction to normal working conditions. The claimant's burden is twofold: 1) it must be proved by objective evidence that the claimant has suffered a psychological injury; and 2) the injury must be a result of abnormal working conditions. *Martin v. Ketchum Inc.*, 523 Pa. 509, 568 A.2d 159 (1990).

■ The Referee found that Claimant suffered a psychological injury, depression, which resulted from her exposure to certain situations on the job which she found demeaning and job threatening. Furthermore, there was evidence from Claimant's treating psychologist, Dr. Greenwald, rendered to the requisite degree of medical certainty, supporting this finding. *Bell Telephone Co. of Pennsylvania v. Workmen's Compensation Appeal Board (DeMay)*, 87 Pa.Commonwealth Ct. 558, 487 A.2d 1053 (1985); *McDonough v. Workmen's Compensation Appeal Board*, 80 Pa.Commonwealth Ct. 1, 470

A.2d 1099 (1984). Dr. Greenwald was asked on direct examination:

> Q. Do you have an opinion as to whether she is disabled from her usual work at Alcoa?
>
> A. Yes. I think that she is quite disabled.
>
> Q. Do you have an opinion as to what is the cause of this disability, this inability to perform her usual jobs at Alcoa?
>
> A. Well, in a nutshell, I think it has to do with the many, many changes and demotions of sorts that she faced in that work and finally culminating in the offer of a layoff which they retracted and then offered her another job, which she really couldn't perform. So I think that it has everything to do with the many, many work changes and things that went on there in her job. And previous to all of this, she was a very high-functioning person. (December 4, 1990 Deposition of Deborah A. Greenwald, Ph.D., at 19–20.)

Therefore, as the Referee found, Claimant has met her burden of proof regarding the existence of the injury and its work related causation, and the first arm of the test announced in *Martin v. Ketchum* has been satisfied.[2] The difficult question is whether the conditions and situations she faced at work were abnormal as defined by our case law.

The substantive requirement that there be an abnormal working condition triggering the psychological disturbance is precautionary, because work stress is present in varying degrees in all occupations. We have held that, "to countenance the distribution of workmen's compensation benefits to all potential claimants who may succumb emotionally to the demands and circumstances of their *otherwise normal* employment would be to usher in a wide spectrum of compensability heretofore unenvisioned by the General Assembly." *Sibrava v. Workmen's Compensation Appeal Board (TWA),* 113

---

2. *Compare Andracki v. Workmen's Compensation Appeal Board (Allied Eastern States Maintenance),* 96 Pa.Commonwealth Ct. 613, 508 A.2d 624 (1986). In this case the medical expert was unable to state with any degree of certainty that the claimant's psychological disability was triggered by the employer notifying her that she would be shifted to night duty. This Court held that there was an inadequate causal connection between the allegedly abnormal event and the injury.

Pa.Commonwealth Ct. 286, 290, 537 A.2d 75, 77 (1988) (emphasis added). We held in *Sibrava* that because there had been no changes in the normal conditions of Mr. Sibrava's twenty year employment in airline load control, his disabling depression, though work related, was not a result of abnormal conditions and hence was not compensable. *Id.*

Similarly, it was specifically held in *Russella v. Workmen's Compensation Appeal Board (National Foam Systems, Inc.),* 91 Pa.Commonwealth Ct. 471, 497 A.2d 290 (1985), that the claimant's duties did not vary over his years of his employment. Because claimant had ten years of the same work under the same conditions in a machine shop, we held that his psychological injuries allegedly caused by noise, dust and fumes, were not the result of abnormal conditions.[3]

Conversely, a change in normal job responsibilities has been held to be an abnormal working condition compensable under the Act. *Bell Telephone; Bevilacqua v. Workmen's Compensation Appeal Board (J. Bevilacqua Sons, Inc.),* 82 Pa.Commonwealth Ct. 511, 475 A.2d 959 (1984); *Leo v. Workmen's Compensation Appeal Board (Borough of Charleroi),* 114 Pa.Commonwealth Ct. 6, 537 A.2d 399 (1988). For instance, in *Bell Telephone,* Judge Craig held that objective evidence that the claimants were transferred to a highly stressful job in Bell's Service Center was sufficient to establish abnormal working conditions, and it was not necessary to prove that the claimants' supervisors publicly harassed or reprimanded them. In discussing *Bevilacqua* and *Thomas v. Workmen's Compensation Appeal Board,* 55 Pa.Commonwealth Ct. 449, 423 A.2d 784 (1990), Judge Craig noted that in *Thomas,* when nothing new or unusual occurred at the workplace around the time of the alleged mental injury, the claimant had not presented

---

**3.** We also held that the record was devoid of any objective evidence that the workplace was noisy, dusty and full of fumes, while the claimant's counsel had stipulated that the workplace was not noisy to others but was only noisy to the claimant. *See also, Squilla v. Workmen's Compensation Appeal Board (Marple Township),* 146 Pa.Commonwealth Ct. 23, 606 A.2d 539 (1992) (a written reprimand to a police officer which caused psychological injury to the claimant followed the accepted form of job discipline which occurs frequently and was therefore not an abnormal working condition.)

sufficient evidence that his working conditions were abnormal. In contrast, in *Bevilacqua,* when evidence of a significant change in job responsibilities was presented, this was sufficient to establish that the claimant's working conditions were not "normal," and that the employment event precipitating stress is real rather than merely perceived. *Bell Telephone.*

Not only must a claimant establish that working conditions were abnormal, there must be objective evidence to substantiate that the claimant's injury was caused by "actual, and not merely perceived or imagined employment events." *Bell Telephone, citing, Hirschberg v. Workmen's Compensation Appeal Board,* 81 Pa.Commonwealth Ct. 579, 474 A.2d 82 (1984). In other words there must be, "objective evidence which is corroborative of his subjective description of the working conditions alleged to have caused the psychiatric injury." *Martin v. Ketchum,* 523 Pa. at 519, 568 A.2d at 164. Thus, for example, when the claimant in *Waldo v. Workmen's Compensation Appeal Board (Erie Metro Transit Authority),* 136 Pa.Commonwealth Ct. 264, 582 A.2d 1147 (1990), alleged that his psychological injury occurred as a result of being harassed by his employer and fellow employees because of an accident which occurred while he was driving a bus, but did not produce any evidence corroborating this harassment, this court held that the injury resulted from a subjective reaction to normal working conditions. However, a claimant need not present corroborating witnesses to show that there were actual abnormal conditions. In *Archer v. Workmen's Compensation Appeal Board (General Motors),* 138 Pa.Commonwealth Ct. 309, 587 A.2d 901 (1991), we held that when the claimant's testimony was not limited to her belief that she *felt* she was being harassed, but included descriptions of actual events showing this harassment, there was objective evidence which was corroborative of her subjective description of working conditions. It is only required that the alleged working conditions meet the test of "actuality." *Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel State Workmen's Insurance Fund),* 134 Pa.Commonwealth Ct.

450, 578 A.2d 1016 (1990), *appeal denied,* 527 Pa. 625, 592 A.2d 46 (1991).

■ This court has recognized that psychological injury arising from abnormal working conditions may be proved in at least two different ways. The first requires objective proof that actual extraordinary events occurred at work which caused the trauma, and these specific events can be pinpointed in time. *Thomas; City of Scranton v. Workmen's Compensation Appeal Board (Hart),* 136 Pa.Commonwealth Ct. 483, 583 A.2d 852 (1990), *appeal denied,* 528 Pa. 625, 597 A.2d 1154 (1991), (police officer's suicide resulted from stress produced by assignment to investigate serial killer who had murdered personal friend); *Archer,* (electric crane operator followed around by supervisor who unfairly accused her of not performing her duties and singled her out from her co-workers who had similarly completed their duties.)

■ The second way of proving abnormal conditions requires the showing that significant changes in working conditions, constituting abnormal conditions, existed over a longer period of time. *Cadden v. Workmen's Compensation Appeal Board (City of Philadelphia),* 135 Pa.Commonwealth Ct. 195, 579 A.2d 1378 (1990), *appeal denied,* 527 Pa. 652, 593 A.2d 424 (1991) (assignment to rescue squad duties would be abnormal, but order was rescinded prior actual assumption of these new and stressful working conditions); *Bell; Bevilacqua,* (change to supervisory position caused psychological injury); *Leo,* (transfer from street department to borough police department triggered psychological injury which left him totally disabled after six years as police officer.)

The determination whether working conditions are or are not abnormal working conditions has been variously classified as a question of law or a mixed question of law and fact. *Archer; Jeanes Hospital; Marsico v. Workmen's Compensation Appeal Board (Department of Revenue),* 138 Pa.Commonwealth Ct. 352, 588 A.2d 984 (1991). However, despite these different classifications, we have uniformly held that this determination is fully reviewable by this court. *Calabris v.*

*Workmen's Compensation Appeal Board (American General),* 141 Pa.Commonwealth Ct. 405, 595 A.2d 765 (1991).

Here, the Referee found that Claimant's depression was a result of exposure to certain situations that she perceived as being demeaning and job threatening. He concluded, however, that Claimant had not been exposed to abnormal working conditions. This conclusion, which was affirmed by the Board, is fully reviewable by this Court.

As discussed above, in determining whether the conditions and situations Claimant faced at work were abnormal working conditions we must look to see if there was a change in normal job responsibilities, whether the Claimant's injury was caused by actual and not merely perceived employment events which are corroborated by objective evidence of her description of the working conditions, and finally whether there were actual extraordinary events, pinpointed in time, which caused her injury and/or significant changes in working conditions, constituting abnormal conditions, existing over a longer period of time.

Beginning in 1985, Claimant's normal job responsibilities changed drastically.[4] The Referee reports that before this change she was functioning as a high level administrative assistant involved with varying, rather responsible assignments under managers in the Legal, Justice, Real Estate and Public Relations Departments. After 1985, when her boss was transferred to Mexico, she became a "floater", and her responsibilities diminished significantly. She mainly performed clerical duties such as filing and transcribing tapes.

4. We held in *Mele v. Workmen's Compensation Appeal Board (Uniontown Hospital),* 155 Pa.Commonwealth Ct. 65, 624 A.2d 738 (1993) that a claimant who worked as a chief medical technologist in lab and who had experienced stress on her job as result of treatment by the doctor in her lab who subsequently eliminated her supervisory position was not entitled to benefits. Such personality conflicts which lead to job changes and even lay offs are not uncommon or abnormal. Here, however, no such conflict existed and we see no rationale for distinguishing between changes in job conditions which result in increased job responsibilities and those which result in decreased job responsibilities.

She was not officially demoted, nor did her salary change, but as a "floater", she was dropped three grades.

Claimant was moved from high responsibility, long hour jobs which she had held for more than twenty years and for which she had received the highest ratings, to low responsibility, low functioning jobs involving the most minimal of secretarial skills.

In the Referee's findings of fact, he describes specific employment events which built up to and precipitated her depression and suicide attempt. These occurred after 1985, during the time when her work status was insecure and when her working conditions had changed drastically. These specific events were in several cases corroborated by both testimonial and documentary evidence.[5]

In June of 1986, Claimant while working as a floater in the corporate library, was put to work in a storage room. Although the Referee concludes there was nothing improper in this, Alcoa employees testified that the room in which she worked contained boxes, filing cabinets, a piano, and boards for Alcoa Singers to stand on at their Christmas shows. She was only removed from this situation when her husband intervened.

The Referee found that Claimant's depression and stress from work-related problems became known to Alcoa by the middle of 1987, and that in May of 1987, after the SEI department was eliminated, she was offered a job elimination package of benefits by Mrs. Litman. For more than month, while she was waiting for the job elimination, she remained in SEI space creating work for herself, as none was assigned, until she was forced to move again when renovation began on the office she was occupying.

5. These actual events distinguish this case from *Martin v. Ketchum.* There our Supreme Court held that, "[i]t was Martin's failure to meet his self-imposed expectations and perception of success that caused him to take his own life. What caused his death was not his employment; Martin carried the impulse of his own destruction with him always." *Martin v. Ketchum,* 523 Pa. at 520, 568 A.2d at 165.

On July 7, 1987 this job-elimination offer was rescinded and she was told about a new "bumping" policy which had been instituted in June of 1987 after management had determined that the former system was absolutely not appropriate for the treatment of employees with long service with Alcoa. (O.R. at 42, February 20, 1991.) Because of this policy the job elimination was not available and she was given the choice of accepting a job in the Procurement Department or being let go. It was at this point, on July 20, 1987 that she consulted an Alcoa psychiatrist, Dr. Slagle and spoke about considering suicide. When she did not take this job she was let go.

Under our case law, objective evidence of these employment events combined with the longer period of change in her employment conditions and status constitute abnormal working conditions. Claimant's psychological injury was caused by these abnormal conditions and hence are compensable under the Act.

Accordingly, we reverse the order of the Board denying benefits to Claimant.

PALLADINO, J., dissents.

## ORDER

AND NOW, this 22nd day of October, 1993, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby reversed.