**CITY OF PHILADELPHIA, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (BRASTEN), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 21, 1996.
Decided Sept. 12, 1996.

---

**4.** 42 Pa.C.S. §§ 101-9781.

Sharon McGrail–Szabo, for Petitioner.

John B. Alessandroni, for Respondent.

Before McGINLEY and FRIEDMAN, JJ., and KELTON, Senior Judge.

FRIEDMAN, Judge.

City of Philadelphia (Employer) appeals from a decision of the Workmen's Compensation Appeal Board (WCAB) affirming the order of a Workers' Compensation Judge (WCJ) which granted workers' compensation benefits to Anthony Brasten (Claimant) pursuant to the Pennsylvania Workers' Compensation Act.[1] We reverse.

Claimant was a police sergeant for Employer when, on June 26, 1992, he was injured while in the course of his employment. Claimant sustained injuries to his knees and lower back, and sprains and strains to his neck during a gun battle with a barricaded individual whom Claimant shot and killed. (WCJ's Findings of Fact, Nos. 1, 3.) Thereafter, Claimant received workers' compensation benefits pursuant to a Notice of Compensation Payable which described his injury as "sprains and strains of the neck." (WCJ's Finding of Fact, No. 2.)

On November 5, 1993, Claimant filed a Petition to Review compensation benefits (Petition), alleging that the Notice of Compensation Payable should be modified to include Claimant's psychiatric injuries resulting from the work incident.[2] Employer filed a timely answer denying the material allegations of Claimant's Petition, (R.R. at 3a), and a hearing was held before a WCJ.

At the hearing, Claimant testified on his own behalf and also presented the testimony of Captain Michael Lutz, a Philadelphia Police Department veteran, and Elizabeth Del-Pezzo, Ph.D., a licensed psychologist.

According to Claimant, after the June 26, 1992 incident, which was his most dangerous experience in his twenty years on the police force, he experienced additional stress upon learning that the barricaded individual whom he shot had been brandishing an unloaded gun at the time. (WCJ's Finding of Fact, No. 6.) Although, initially, the neighbors of the slain individual praised Claimant, and Claimant's superiors told him that he would be commended for his actions, Claimant began to feel betrayed and abandoned after the neighbors began to call for the suspension or termination of the officers involved and Claimant became the subject of ongoing media attention and investigations by the Philadelphia Police Department and the District Attorney's office. (WCJ's Findings of Fact, Nos. 7–11.) The investigations led to Claimant's indictment for voluntary manslaughter, involuntary manslaughter and recklessly endangering another person. (WCJ's Finding of Fact, No. 12.) A month later, after those charges were dismissed at a preliminary hearing, Claimant was re-arrested on the same charges; once again, the reckless endangerment and voluntary manslaughter charges were dismissed at a preliminary hearing and Claimant was found not guilty after trial on the involuntary manslaughter charge. (WCJ's Findings of Fact, Nos. 14–16.) As a result of the charges and publicity, Claimant suffered anxiety and depression. (WCJ's Finding of Fact, No. 17.) The WCJ found Claimant's testimony to be credible, persuasive and convincing. (WCJ's Finding of Fact, No. 18.)

Captain Lutz testified that it is not normal for a police sergeant to be involved in a shooting such as the one Claimant was involved in, and that the subsequent charges brought against Claimant were extremely abnormal. The WCJ found Captain Lutz' testimony credible, but not dispositive of whether the incident was an abnormal working condition because Captain Lutz was not involved in the incident or its aftermath. (WCJ's Finding of Fact, No. 19.)

Dr. DelPezzo testified that, in her opinion, Claimant suffered from a post-traumatic stress disorder, which she considered to be an objective reaction to events happening after the shooting. The WCJ found Dr. DelPezzo's testimony to be credible, persuasive and convincing. (WCJ's Findings of Fact, Nos. 23–25.)

In opposition to Claimant's Petition, Employer presented the testimony of Captain John McGinnis and Sergeant John McCorri-

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4.

2. Claimant also contended that the Notice of Compensation Payable failed to include knee injuries and two herniated discs; however, these issues are not before us.

ston, both of whom the WCJ found credible. Captain McGinnis testified that the June 26, 1992 shootout was within the normal working conditions of a Philadelphia police sergeant, but that Claimant's subsequent prosecution and indictment was not a normal part of a police officer's job. (WCJ's Finding of Fact, No. 26.) Sergeant McCorriston also testified that the events of June 26, 1992 were within normal working conditions for a Philadelphia police officer. (WCJ's Finding of Fact, No. 27.)

Based upon the foregoing testimony, the WCJ concluded that Claimant had met his burden of proving that Claimant "suffered a functional overlay as a result of a physical[/]mental work injury" and, thus, granted Claimant's Petition. (WCJ's Conclusion of Law, No. 3.) Both parties appealed to the WCAB, which affirmed. (R.R. at 173a–80a.)

■ On appeal to this court,[3] Employer argues that the WCAB erred in affirming the WCJ because the WCJ committed reversible error by applying the physical/mental standard, rather than the stricter mental/mental standard, to Claimant's mental injury.[4] Moreover, according to Employer, even were we to find the WCJ's error to be harmless, Claimant is not entitled to benefits because there is not substantial evidence to support the WCJ's finding that events occurring after the shootout created an abnormal working condition for Claimant.

3. Our scope of review in workers' compensation decisions is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Berks County Home v. Workmen's Compensation Appeal Board (Schnable)*, 145 Pa. Cmwlth. 582, 604 A.2d 767 (1992). Substantial evidence is such relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Benson v. Workmen's Compensation Appeal Board (Haverford State Hospital)*, 668 A.2d 244 (Pa.Cmwlth.1995).

4. Three types of psychological injuries are compensable under the Act: (1) mental/physical—where a psychological stimulus causes physical injury; (2) physical/mental—where a physical stimulus causes a psychic injury; and (3) mental/mental—where a psychological stimulus causes a psychic injury. *Selkow v. Workmen's*

■ Regarding Employer's first argument, although Claimant and Employer both argued this case as a mental/mental claim, the WCJ granted Claimant's Petition after concluding that Claimant had suffered a physical/mental injury. We agree with Employer that, because there is no evidence in the record to support such a conclusion, this conclusion was in error.

■ In a physical/mental injury case, a claimant sustains a physical trauma, which usually results in some physical disability, after which the claimant exhibits some psychological or nervous injury which impedes his or her ability to maintain employment; a claimant suffering a mental injury from a physical stimulus need only prove that the stimulus caused the injury.[5] *Whiteside v. Workmen's Compensation Appeal Board (Unisys Corporation)*, 168 Pa.Cmwlth. 488, 650 A.2d 1202 (1994), *appeal denied*, 544 Pa. 650, 664 A.2d 978 (1995). Although Claimant did sustain physical injuries as a result of the June 28, 1992 incident, at no time has Claimant or any other witness alleged that these injuries are the cause of Claimant's subsequent mental difficulties. To the contrary, Claimant asserted that his psychic injury developed after the incident as a result of the publicity, investigations and indictments connected with the shooting; this assertion is supported by the testimony of Dr. DelPezzo, who testified that the *events subsequent to the shooting* caused the post-traumatic stress disorder.[6]

*Compensation Appeal Board (Anchor Davis–Jay Box Company)*, 662 A.2d 31 (Pa.Cmwlth.), *appeal denied*, 542 Pa. 681, 668 A.2d 1141 (1995). These categories require different standards of proof, the last being the most rigorous, requiring proof of abnormal working conditions. *Id.*

5. As we stated in *Whiteside*, examples of such physical/mental injuries include: depression and attempted suicide arising from the fear of returning to a job where the claimant had been pinned by a hopper, hysterical blindness after being sprayed in the eye with oven cleaner, and psychosomatic uncontrollable flapping of the wrist after a glass shelf fell on it. *Id.* 650 A.2d at 1206.

6. The WCJ seems to have been thrown off by Dr. DelPezzo's acknowledgment that, in addition to causing mental injury, the stress also resulted in physical symptoms common to stress reactions

Although the WCJ's conclusion that Claimant suffered a physical/mental injury was in error, it is obvious from the WCJ's finding of abnormal working conditions that the WCJ properly intended to examine this as a mental/mental injury claim; thus, the WCJ's misstatement in Conclusion of Law, No. 3, is harmless error and we will review the decision as a mental/mental injury claim.

■ Employer next argues that the WCJ erred in granting benefits to Claimant by improperly finding that the indictments were abnormal working conditions.[7] We agree.

■ To succeed on a mental/mental injury claim, a claimant must prove: (1) he or she suffered a psychiatric injury (2) which was causally related to his or her employment and (3) was more than a mere subjective reaction to normal working conditions (4) for that kind of job. *Antus v. Workmen's Compensation Appeal Board (Sawhill Tubular)*, 155 Pa.Cmwlth. 576, 625 A.2d 760, *appeal granted*, 535 Pa. 639, 631 A.2d 1010 (1993), *and affirmed without opinion*, 536 Pa. 267, 639 A.2d 20 (1994). An abnormal working condition causing a psychic injury may be a specific event which can be pinpointed in time or may occur over a longer period of time. *Cadden v. Workmen's Compensation Appeal Board (City of Philadelphia)*, 135 Pa.Cmwlth. 195, 579 A.2d 1378 (1990), *appeal denied*, 527 Pa. 652, 593 A.2d 424 (1991). Even assuming that Claimant has proven that he suffered a psychiatric injury causally related to his employment,[8] benefits here may be granted only if his

reaction to the indictments was more than a mere subjective reaction to *normal* working conditions.

We have noted repeatedly in the past that the job of police officer is one which is inherently highly stressful.[9] In *City of Scranton v. Workmen's Compensation Appeal Board (Hart)*, 136 Pa.Cmwlth. 483, 583 A.2d 852 (1990), *appeal denied*, 528 Pa. 625, 597 A.2d 1154 (1991), we stated:

> [F]or a high stress working environment to constitute a legally sufficient abnormal working condition, there must be a finding either that claimant's work performance (as distinguished from the mere job description) was unusually stressful for that kind of a job or a finding that an unusual event occurred making the job more stressful than it had been.

*Id.* 583 A.2d at 856, *quoting Bell Telephone Company of Pennsylvania v. Workmen's Compensation Appeal Board (DeMay)*, 87 Pa.Cmwlth. 558, 487 A.2d 1053, 1058–59 (1985). However, neither of these two situations exist here. First, Claimant does not allege that his work performance was the cause of his mental injury; rather, relying on the second way of showing an abnormal working condition, Claimant argues that the indictments, investigations and media attention were unusual events which created extraordinary stress and so constituted an abnormal working condition. We disagree.

The credited testimony of the various police witnesses established that investigations

---

such as sweating, heart palpitations, rapid breathing, headaches, gastrointestinal problems and sexual dysfunction. (R.R. at 139a.) In fact, it was Employer's counsel, not Dr. DelPezzo, who used the phrase "psychological overlay" to describe Claimant's situation; at no time was the phrase "functional overlay" used by anyone other than the WCJ. Moreover, even if these stress-related physical symptoms were found to be a compensable injury under the Act, they would support a conclusion of a mental/physical injury, *not* a physical/mental injury, as concluded by the WCJ.

7. We note that whether a claimant has been subjected to abnormal working conditions so as to permit the claimant to recover benefits for purely psychiatric disability is a mixed question of law and fact, fully reviewable by this court on appeal. *Antus v. Workmen's Compensation Ap-*

*peal Board (Sawhill Tubular)*, 155 Pa.Cmwlth. 576, 625 A.2d 760, *appeal granted*, 535 Pa. 639, 631 A.2d 1010 (1993), *and affirmed without opinion*, 536 Pa. 267, 639 A.2d 20 (1994).

8. Dr. DelPezzo's unequivocal medical testimony provides substantial competent evidence for the WCJ's findings that Claimant suffered anxiety and depression as a result of the indictments, re-arrest and publicity.

9. *See Squilla v. Workmen's Compensation Appeal Board (Marple Township)*, 146 Pa.Cmwlth. 23, 606 A.2d 539 (1992); *City of Scranton; City of Wilkes–Barre v. Workmen's Compensation Appeal Board (Swan)*, 130 Pa.Cmwlth. 186, 567 A.2d 771 (1989), *appeal denied*, 527 Pa. 619, 590 A.2d 759 (1990), *and appeal denied sub nom. In re Swan*, 527 Pa. 620, 590 A.2d 760 (1990).

are routine after incidents such as the June 26, 1992 shootout. Criminal indictments and public outcry may not necessarily result from such investigations, but neither can these eventualities be considered outside the realm of possibility. Anyone who commits a homicide in this Commonwealth, justifiable or not, should expect to face the consequences stemming therefrom; this includes police officers for whom shooting people is an inherent job risk. Indeed, as protectors of the peace, police officers may be subject to an even higher scrutiny, which in this modern age may occur through the media of television, print, radio and even public protest and outcry.

We do not doubt that the public and official sentiment Claimant was confronted with after the June 26, 1992 incident was traumatically upsetting to Claimant and resulted in psychological injury. However, we are unable to conclude that his injury was the result of an abnormal working condition.[10] Rather, Claimant's injury is the result of a subjective response to a difficult situation that must be considered to be within the scope of his normal foreseeable working conditions as a police officer.

Accordingly, we reverse.

### ORDER

AND NOW, this 12th day of September, 1996, the order of the Workmen's Compensation Appeal Board at A94-3035 is reversed.

---

10. We are not insensitive to the high emotional demands often endured by police officers, but we have noted before that police officers often face difficult, even traumatic, situations in the course of their jobs which cannot be considered abnormal for that job. See Clowes v. Workmen's Compensation Appeal Board (City of Pittsburgh), 162 Pa.Cmwlth. 583, 639 A.2d 944 (1994) (holding that police officer in homicide division who discovered the body of a close friend did not suffer an abnormal working condition because, even though it was an understandably traumatic event, encountering dead bodies is a *normal working condition* for homicide police officers). In fact, when an increasingly stressful job situation is not accompanied by a commensurate increase in job responsibilities, we have found that an abnormal working condition does not exist. See City of Scranton.

1. Mr. John B. Alessandroni, Claimant's attorney, to Lutz:

McGINLEY, Judge, dissenting.

I respectfully dissent to the majority's conclusion that "Claimant's injury is the result of a subjective response to a difficult situation that must be considered to be within the scope of his normal foreseeable working conditions as a police officer." As the majority noted, this Court has previously stated in *City of Scranton v. Workmen's Compensation Appeal Board (Hart)*, 136 Pa.Cmwlth. 483, 583 A.2d 852 (1990), *appeal denied*, 528 Pa. 625, 597 A.2d 1154 (1991) that "[f]or a high stress working environment to constitute a legally sufficient abnormal working condition ... there must be a finding that an unusual event occurred making the job more stressful than it had been." *Id.* 583 A.2d at 856, *quoting Bell Telephone Company of Pennsylvania v. Workmen's Compensation Appeal Board (DeMay)*, 87 Pa.Cmwlth. 558, 487 A.2d 1053, 1058–59 (1985).

In the present controversy, although there is no dispute that investigations are routine following such an incident as the shootout that occurred on June 26, 1992, an indictment is not. Michael Lutz (Lutz), President of the Fraternal Order of Police, testified that Claimant's indictment on murder charges was not a normal part of a police officer's duties.[1] Captain John McGinnis of the Philadelphia Police Department testified that an indictment of a police officer based upon events that took place was extremely rare.[2]

Q: Now, as you're aware, following the incident Sergeant Brasten was indicted on two occasions and forced to go to trial—to Court on murder charges. Would that be, in your mind a normal part of the job of a police officer to be faced with murder charges after an incident like this?
A: I think it was extremely abnormal, and I think it was extremely unfortunate that the sergeant had to go through this ordeal for not only himself but his entire family.
Notes of Testimony, September 15, 1994, at 9–10; Reproduced Record (R.R.) at 103a–04a.

2. Mr. Alessandroni to McGinnis:
Q: [W]ould you say that being indicted on types of charges that Sergeant Brasten was indicted on ... would be [a] normal part of your job?
A: To be indicted?
Q: On the charges that officer—Sergeant Brasten was indicted on?

Because I believe that there is substantial evidence of record to support a finding that Claimant's prosecution constituted an abnormal working condition, I would affirm the decision of the Board.

. . . .

A:  Well, that virtually never happens, so that way I would say it's not a normal part of the job.

Notes of Testimony, June, 1994, at 22–23; R.R. at 75a–76a.